**STATE of Tennessee, Petitioner,**

v.

**James Benjamin TILSON, Defendant.**

Supreme Court of Tennessee.

Jan. 7, 1974.

David M. Pack, Atty. Gen., John B. Hagler, Jr., Asst. Atty. Gen., Nashville, Ronald A. Webster, Dist. Atty. Gen., Knoxville, Lance Evans, Asst. Dist. Atty. Gen., Knoxville, for petitioner.

Robert M. Stivers, Jr., John M. Norris, Knoxville, for defendant.

## OPINION

DYER, Chief Justice.

The defendant, James Benjamin Tilson, on a plea of not guilty, went to trial under an indictment charging him with first degree murder. The jury returned a verdict of murder in the second degree. This was approved by the trial judge, and judgment was entered sentencing the defendant to serve ten to twenty years in the State Penitentiary. The Court of Criminal Appeals found under authority of Forsha v. State, 183 Tenn. 604, 194 S.W.2d 463 (1956), that the evidence did not support a verdict of murder in the second degree and subject to acceptance by the State reduced the judgment of second degree murder to manslaughter. We granted certiorari.

Events leading to this incident took place on April 7, 1971, between the hours of 4:30 o'clock, P.M. and 8:00 o'clock, P.M., either in or outside of the Cue Lounge in Knoxville, Tennessee. The Cure Lounge consists of a poolroom and bar, and this record indicates that barroom brawls there are not uncommon.

The parties involved are as follows: James Benjamin Tilson, the defendant; Joe King, the deceased victim; Eddie Tilson, brother of defendant; John Samuel Wright, who worked in the Lounge; Jack Farmer, who apparently was a part-owner of the Lounge; James Wright, a brother of John Samuel Wright; Lucky Jennings; Doug Ellison; Ronnie Solomon; and Kirt Wallace. During this time there was heavy drinking by most of these persons, especially defendant and deceased.

During the afternoon, prior to 6:00 o'clock, P.M., the deceased, on a bet, demonstrated his ability to draw a knife. About this time deceased and Kirt Wallace got into a fight that resulted in Wallace being severely beaten. The defendant was not present at the time, but testified that when he arrived at the Lounge the fight was being discussed by several persons who were present.

About 8:00 o'clock, P.M., Eddie Tilson and Ronnie Solomon got into a fight. Lucky Jennings joined in the fight, kicking Eddie Tilson in the head. Doug Ellison hit defendant several hard blows in the stomach, and after Ellison secured a pool cue defendant hurriedly left the Lounge.

It is shown Doug Ellison openly carried a pistol. At this time John Samuel Wright and Jack Farmer stopped the fight, then Eddie Tilson, the deceased, John Samuel Wright and James Wright all went outside the Lounge and were standing on the sidewalk discussing the fight when the next events occurred. The entire incident took place in approximately two minutes. Defendant, after he hurriedly left the Lounge, went a short distance up the street and took a pistol from his car. On the witness stand, defendant testified he obtained the pistol to do something about Doug Ellison and Big Ronnie Solomon. After getting the pistol from the car, defendant started walking back to the Lounge and when he was about six feet from deceased fired one shot, striking deceased in the chest. This wound was the cause of his death the following day. After shooting deceased, defendant opened the door of the Lounge and fired one shot into the Lounge.

Defendant, after being fully advised of his rights, told officers he intended to kill deceased.

■ Defendant's theory was that he shot deceased in defense of his life. The State witnesses testified that deceased, at the time he was shot, was standing next to Eddie Tilson talking about the fight, and at the time had nothing in his hands. Defendant testified that deceased was standing next to Eddie Tilson with his arm around Eddie, and as he approached them deceased turned toward him and went for his pocket, causing defendant to shoot deceased. The jury rejected this claim of self-defense, which the Court of Criminal Appeals agrees was correct. We also agree on this point.

The Court of Criminal Appeals included in its opinion the following part of the trial judge's charge:

Voluntary manslaughter is where a person or persons on a sudden heat of passion unlawfully, but without malice, kills another. It is also where, upon reasonable and legal provocation such as sudden combat, or an assault upon him or them of little or no violence and before the passion had time to subside, he, without malice, but unlawfully, kills his adversary. There must be sudden passion, upon reasonable provocation, to negative the idea of malice. If the intention and the act are the result of impulse and passion, executed upon sudden and adequate provocation, or being greatly excited upon sufficient cause, and the act is impelled by a sudden motive of revenge, the idea of malice is repelled, and the killing is voluntary manslaughter.

The provocation adequate to reduce the crime to voluntary manslaughter requires that reason should, at the time of the act, be disturbed or obscured by passion to an extent rendering ordinary men, of fair average disposition, liable to act rashly or without due deliberation or reflection, and from passion rather than judgment.

■ The Court of Criminal Appeals, citing Young v. State, 30 Tenn. 200 (1850); Quarles v. State, 33 Tenn. 407 (1853); Freddo v. State, 127 Tenn. 376, 155 S.W. 170 (1912); Whitsett v. State, 201 Tenn. 317, 299 S.W.2d 2 (1957); Cooper v. State, 210 Tenn. 63, 356 S.W.2d 405 (1962); Smith v. State, 212 Tenn. 510, 370 S.W.2d 543 (1962), found the above charge was a correct statement of the law. We agree.

Under the above charge the Court of Criminal Appeals reduced this conviction to voluntary manslaughter upon the following findings: First, as to this fight resulting in deceased's death, the deceased, Ronnie Solomon, and Doug Ellison, and Lucky Jennings, were all on one side. Defendant and his brother, Eddie Tilson, were on the other side. Secondly, Ronnie Solomon was the aggressor in this fight. Thirdly, although deceased took no active part in this fight, the Court of Criminal Appeals

brought him under the language of the court's charge on voluntary manslaughter by the following statement in its opinion:

> Joe Samuel King, Jr., although allied with Ellison, et al, apparently took no part in the brawl just described. However, he followed the Tilsons outside and apparently engaged Eddie Tilson in conversation, the gist of which was that he could get Solomon outside to singly fight Eddie Tilson (since apparently Tilson was complaining of having been ganged inside).

The Court of Criminal Appeals' error on this appeal is that the record does not support its finding on one decisive point: the only evidence in the record that deceased was on any side in this fight was the testimony that he was friendly with, or a friend of Ronnie Solomon, Doug Ellison and Lucky Jennings. All the witnesses, without exception, including Eddie Tilson, stated deceased took no part directly or indirectly in this fight. There is no evidence in the record that the earlier fight between deceased and Kirt Wallace was in any way related to the fight resulting in deceased's death.

To sustain the Court of Criminal Appeals would add a new dimension to the definition of voluntary manslaughter. That is, if the Court of Criminal Appeals holding was sustained, it would now constitute voluntary manslaughter for a defendant, under reasonable and legal provocation, such as sudden combat, to kill a non-combatant by-stander, provided either by association or friendship, or both, with the other combatant, the by-stander could be characterized as "on the side" of the one actually provoking the fight. Also, as pointed out by the Attorney General, this holding would extend intolerably the "mutual combat" rule of Hunt v. State, 202 Tenn. 227, 303 S.W.2d 740 (1956).

We have considered all other assignments of error and find them without error, as did the Court of Criminal Appeals.

The judgment of the Court of Criminal Appeals is reversed and the judgment of the trial court affirmed.

McCANLESS and FONES, JJ., LEECH and JENKINS, Special Justices, concur.